UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHY DUMONT, Individually and on behalf of all others similarly situated, | Case No. _____ |
| PLAINTIFF, | CLASS ACTION COMPLAINT |
| V. | JURY TRIAL DEMANDED |
| REILY FOODS COMPANY and NEW ENGLAND COFFEE COMPANY | |
| DEFENDANTS. | |

Plaintiff, Kathy Dumont ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendant, Reily Foods Company ("Reily") and its subsidiary New England Coffee Company ("NECC") (collectively "Defendants") for falsely advertising, marketing and selling certain coffees marketed under the New England Coffee brand. Plaintiff alleges on personal knowledge as to all facts related to herself and upon information and belief as to all other matters.

**INTRODUCTION**

1.      This is a class action brought on behalf of Plaintiff and a nationwide class of consumers who purchased certain New England Coffee Company coffees ("Coffees" or "Products"). Plaintiff purchased NECC's Hazelnut Crème Coffee. The front of the package prominently described the coffee as Hazelnut Cream and indicated only that it was a medium blend with a rich nutty flavor leaving the Plaintiff and fellow consumers to reasonably believe that the coffee contained enough of its characterizing ingredient (i.e. hazelnut) to provide it with the promised flavor. In truth, however, the Hazelnut Crème Coffee contains none of its characterizing ingredient, and instead is both artificially and naturally flavored.

2.      By law, any food which is expected to contain its characterizing ingredient, but does not, and instead is flavored, must make that disclosure to consumers on the front of its packaging. Failure to do so misleads reasonable consumers into believing they are purchasing an item with qualities it does not have, and is in clear violation of the law.

3.      By letter dated July 28, 2017, Ms. Dumont made a formal demand pursuant to Massachusetts General Laws, Chapter 93A, Section 9 requesting that NECC cease this deceptive practice and agree to appropriately remunerate Ms. Dumont and the class she seeks to represent. On August 22, 2017, Ms. Dumont's counsel received a response from Reily claiming that they strictly comply with all food labeling laws and regulations and that Ms. Dumont has no claim.

4.      Plaintiff brings this action, on behalf of herself and others similarly situated, to stop the dissemination of this false and misleading advertising, correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased the Products. Plaintiff alleges violations of Massachusetts General Laws, Chapter 93A, § 2; Massachusetts General Laws, Chapter 266, § 91, and, alternatively, asserts a claim for unjust enrichment.

5.      Plaintiff also seeks injunctive and declaratory relief based upon Defendants' conduct asserted in this Complaint. Defendants' labeling of its Coffees is misleading to consumers and injunctive relief is necessary to ensure the cessation of this practice.  Even if Defendants elect to cure the labeling violations alleged in this Complaint, they are not presently enjoined from re-engaging in the deceptive conduct alleged herein.  Accordingly, Plaintiff seeks declaratory and injunctive relief to ensure that Defendants properly label their Coffees and to prevent Defendant from making the same misleading claims in the future.

**PARTIES**

6.      Defendant Reily Foods Company is a conglomerate broadly specializing in the sale of food and beverages. It was started over 100 years ago as a company dedicated to the roasting, grinding, packaging and distribution of canned coffee. While it has added a variety of food and beverage products to its portfolio, Reily has maintained a significant position in the manufacture and sale of coffee. In 2009 it acquired the New England Coffee Company whose flavored coffees are the subject of this litigation.  Reily sells its products nationally and is headquartered in New Orleans, Louisiana.

7.      Defendant New England Coffee Company maintains its principal place of business at 100 Charles Street, Malden, MA 02148-6773, from where it manages and directs its nationwide sales and business operations. It is therefore believed and averred that a substantial portion of the misleading labeling and related misconduct at issue in this Complaint occurred, was conducted and/or directed and emanated from Massachusetts, including, but not limited to: a) the design of the coffee packaging; b) the review, approval and revision of labels; and c) dissemination of the Product.

8.      Plaintiff Kathy Dumont is currently, and has been throughout the Class Period, a Rhode Island resident. During the Class Period, Ms. Dumont purchased at least one package of NECC's Hazelnut Crème Coffee in Massachusetts based on the representation and reasonable belief that the Coffee contained Hazelnut. Contrary to the representation on its label, however, the Coffee did not contain any Hazelnut, but rather, was artificially and naturally flavored. Had Ms. Dumont known that the Coffee's label was materially inaccurate and that the Product did not include hazelnut, she would not have purchased the product.

**JURISDICTION AND VENUE**

9.      Jurisdiction of this Court is proper under 28 U.S.C. §1332(d)(2).  Diversity jurisdiction exists as Reily is headquartered in Louisiana, NECC is headquartered in

3

Massachusetts, Plaintiff Dumont is a resident of Rhode Island and the nationwide class ("Class") consists of citizens and residents of states across the country.[1]  The amount in controversy exceeds $5,000,000 for Plaintiff and Class members collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiff and the Class, and the profits reaped by Defendants from their transactions with Plaintiff and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

10.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of herein occurred and affected persons and entities that are in this judicial district, and Defendants have received substantial compensation from such transactions and business activity in this judicial district, including as the result of purchases of NECC's coffees from retail locations herein.  Further, NECC inhabits and/or may be found in this judicial district, and the interstate trade and commerce described herein is and has been carried out in part within this judicial district.

## PRODUCT LABEL

11.     Consumers, including Plaintiff and putative Class Members, reasonably rely on product labeling to inform their purchasing decisions. Inaccurate labeling results in consumer deception and gives rise to the allegations set forth herein.

12.     During the Class Period, Defendants labeled, marketed, advertised and sold NECC Hazelnut Crème Coffee and other flavored coffees.

13.     The front of the Product package described the contents as "100% Arabica Coffee," a "Medium Blend," with "Rich Nutty Flavor."  The Product was prominently characterized as Hazelnut Crème."

---

[1]  If a national class is not certified, Plaintiff reserves the right, in the alternative, to seek class certification of a Massachusetts class against Defendants.



14.     Nowhere on the front of the package was there any indication that the Product was entirely devoid of its characterizing ingredient. Rather, buried on the back side of the label in the far-left corner in tiny print was the only indication that the Product did not contain its characterizing ingredient, but rather was flavored. "Ingredients: 100% Arabica Coffee **Naturally and Artificially Flavored**." (emphasis added)



## LABELLING REQUIREMENTS

15.     The federal Food, Drug & Cosmetics Act ("FDCA") is a comprehensive federal consumer protection law that broadly, but non-exclusively, regulates the sale of food to the consuming public.  21 U.S.C §301.  The term food broadly means "articles used for food or drink for man…" and coffee beans, and any derivative thereof, are considered food under the FDCA. 21 USC §321(f).

16.     "Congress passed the Food, Drug, and Cosmetic Act to ensure that food and beverage manufacturers do not mislead or deceive consumers with their advertising. The FDCA's purpose is to protect consumers from adulterated and misbranded food and beverages. The FDCA prohibited misbranding food and beverages using false or misleading labels to further this goal." *The Crusade Against Misleading Labels: Are Manufacturers the Protectors of*

6

*Consumer Interests?,* Pezzullo, Andrea M., Suffolk University Law Review; 2016, Vol. 49 Issue

2, p323-342.

      17.    The   FDCA prohibits the misbranding of any food. 21 U.S.C. §331(b).

Generally, a food is "misbranded" if, among other things, its labeling is false or misleading." 21

U.S.C. § 343. 21 C.F.R. §101.22 specifically provides:

> (i) If the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means, or if for any other reason the manufacturer or distributor of a food wishes to designate the type of flavor in the food other than through the statement of ingredients, such flavor shall be considered the characterizing flavor and shall be declared in the following way:

> (1)(i) If the food is one that is commonly expected to contain a characterizing food ingredient, e.g., strawberries in "strawberry shortcake", and the food contains natural flavor derived from such ingredient and an amount of characterizing ingredient insufficient to independently characterize the food, or the food contains no such ingredient, the name of the characterizing flavor may be immediately preceded by the word "natural" and shall be immediately followed by the word "flavored" in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "natural strawberry flavored shortcake," or "strawberry flavored shortcake."

> (1)(ii) If none of the natural flavor used in the food is derived from the product whose flavor is simulated, the food in which the flavor is used shall be labeled either with the flavor of the product from which the flavor is derived or as "artificially flavored."

> (2) If the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name(s) of the characterizing flavor, in letters not less than one-half the height of the letters used in the name of the food and the name of the characterizing flavor shall be accompanied by the word(s) "artificial" or "artificially flavored", in letters not less than one-half the height of the letters in the name of the characterizing flavor, e.g., "artificial vanilla", "artificially flavored strawberry", or "grape artificially flavored".

18.     The Coffee sold by Defendants is characterized as Hazelnut Crème.  It does not contain hazelnut, but rather, is flavored with natural and artificial flavoring.  By law, therefore, Defendants must disclose the fact that the Product is flavored on the front of the Product's packaging.  Defendants have failed to make such a disclosure and therefore are in violation of the law. 21 C.F.R. §101.22.

19.     Properly indicating that a coffee is flavored is not only a legal requirement, but it is a material term on which a reasonable consumer would rely. This fact is demonstrated by Defendants' numerous marketplace competitors, each of whom market similarly flavored products, but instead have chosen to label them in a manner that promotes consumer understanding and is consistent with their obligations under the law. *See, e.g*. Illustration Nos. 1-4.

Illustration No. 1



Illustration No. 2



Illustration No. 3          Illustration No. 4




20.     The contrast is further illustrated by the labeling of French Market Coffee, a brand owned by the American Coffee Company, a subdivision of Defendant Reily Foods.

21.     Like NECC, the coffee is composed of Arabica beans, Natural and Artificial Flavors.  Unlike NECC, however, it clearly discloses on the front of the package, as it is obligated to, that the product is flavored.




22.     Ultimately, and perhaps the most compelling comparison can be made to NECC's own line of flavored coffees.  Upon information and belief, since the transmission of Plaintiff's demand letter, NECC has initiated a label change on some of its flavored coffees.  NECC identifies 27 of its coffees as "flavored." https://www.newenglandcoffee.com/product-category/coffee/flavored (last visited 11-16-17). Fifteen of those flavors now bear new packaging. Like the Hazelnut Crème, they do not contain their characterizing ingredients, but rather are naturally and artificially flavored. Unlike Hazelnut Crème, the front of the coffee labels indicate, as they must, that the products are flavored.

 

.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action on behalf of herself and on behalf of all other members of the Class ("Class"), defined as all persons who purchased NECC coffees, which contain natural and/or artificial flavors, but fails to indicate the coffee is flavored on the front label of the package.  The Class Period is limited to statute of limitations applicable to each cause of action. Plaintiffs bring this Class pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2) and 23(b)(3). Excluded from the Class are: Defendants and their employees, principals, affiliated entities, legal representatives, successors and assigns.

24.     Upon information and belief, there are tens of thousands of Class members who are geographically dispersed throughout the United States.  Therefore, individual joinder of all members of the Class would be impracticable.

25.     Common questions of law or fact exist as to all members of the Class.  These questions predominate over the questions affecting only individual class members.  These common legal or factual questions include:

      a.   Whether Defendants' labeling of its coffees is likely to deceive class members or the general public;

      b.   Whether Defendants' representations are unlawful; and

      c.   The appropriate measure of damages and/or restitution.

26.     Plaintiff's claims are typical of the claims of the Class in that Plaintiff was a consumer who purchased Defendants' flavored coffee in the United States that was characterized by specific ingredients yet did not contain those ingredients but rather was flavored – a fact that was not disclosed on the front of the product package. Plaintiff, therefore, is no different in any relevant respect from any other Class member, and the relief sought is common to the Class.

27.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, and she has retained counsel competent and experienced in conducting complex class action litigation.  Plaintiff and her counsel will adequately protect the interests of the Class.

28.     A class action is superior to other available means for the fair and efficient adjudication of this dispute.  The damages suffered by each individual Class member likely will be relatively small, especially given the relatively small cost of the food products at issue and the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' conduct.  Thus, it would be virtually impossible for Class members individually to effectively redress the wrongs done to them.  Moreover, even if Class members could afford

individual actions, it would still not be preferable to class-wide litigation.  Individualized actions present the potential for inconsistent or contradictory judgments.  By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

29.     In the alternative, the Class may be certified because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to the Class.

## COUNT I
## VIOLATION OF MASSACHUSETTS GENERAL LAWS ("M.G.L."), CHAPTER 93A, § 2

30.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth therein.

31.     Defendants' conduct, as alleged herein, constitutes unfair or deceptive acts or practices and unfair methods of competition in trade or commerce in violation of M.G. L. c. 93A, § 2 and the regulations promulgated thereunder, including without limitation, 940 C.M.R. §§ 3.02, 3.05(1), 3.05(2), 3.16(2), 3.16(3) and 3.16(4).

32.     In accordance with M.G.L., c. 93A, § 9(3), on July 28, 2017 a proper written demand for relief was made on Defendant under M.G.L., Chapter 93A, on behalf of Plaintiff and the Class. Defendant did not make a reasonable offer of relief to the Class.

33.     M.G.L., c. 93A § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L., c. 93A § 9 permits any consumer injured by a violation of M.G.L., c. 93A §2 to bring a civil action, including a class action, for damages and injunctive relief.

34.     Defendants engaged in unfair and deceptive acts and/or practices in the conduct of trade or commerce in violation of M.G.L., c. 93A § 2.

35.     Defendants' unfair and deceptive scheme to mislead consumers was comprised of unfair and deceptive acts or practices, including, but not limited to, uniformly representing to Plaintiff and the Class, by means of its labeling of the Products, that they contained their characterizing ingredients when, in fact, they did not. This unfair and deceptive act and practice has the capacity, tendency, and/or likely to deceive or mislead reasonable consumers.

36.     Defendant's conduct, as alleged herein, violates various regulations promulgated by the Massachusetts Attorney General pursuant to c. 93A, § 2(c)including the following:

    a.  940 C.M.R. § 3.02 (prohibiting, among other things, statements or illustrations used in advertisements which create a false impression of the grade, quality, value, or usability of the product offered);

    b.  940 C.M.R.§ 3.05(1) (prohibiting claims or representations "made by any means concerning a product which, directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect");

    c.  940 C.M.R. §3.05(2) (prohibiting the use of any advertisement "which would mislead or tend to mislead buyers or prospective buyers, through pictorial representations or in any other manner, as to the product being offered for sale");

    d.  940 C.M.R. § 3.16(2) (providing that it is a violation of c. 93A, § 2 to "fail to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer to enter into the transaction"); and

    e.  940 C.M.R. § 3.16(3) (providing that an act or practice violates c. 93A, § 2 if it "fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety or welfare

14

promulgated by the Commonwealth or any political subdivision thereof intended to provide consumers of this Commonwealth protection").

37.     Defendant has mislabeled and misbranded the Product, in violation of various state and federal statutes and regulations, including:

    a.  Mass. Gen. Laws, c. 94, § 187 (providing that food shall be misbranded when (1) "its labeling is false or misleading in any particular;" and (2) "it is in imitation or semblance of any other food" and does not bear in type of uniform size and prominence, the word "imitation") and §190 (barring the manufacture, sale, delivery or offer of delivery of misbranded food);

    b.  Code of Federal Regulations, 21 U.S.C. § 343;

    c.  Code of Federal Regulations, 21 CFR § 102.22;

38.     Such mislabeling, and misbranding constitutes unfair and deceptive conduct in violation of c. 93A, § 2.

39.     Pursuant to 940 C.M.R. § 3.16(3) and § 3.16(4), violations of the foregoing provisions are also violations of c. 93A, § 2.

40.     Defendant's violations of M.G.L., c. 93A were willful and knowing.

41.     As a direct and proximate result of Defendant's unfair and deceptive acts, Plaintiff and the Class were injured and suffered damages and are entitled to actual or statutory damages, treble damages, attorneys' fees and costs. The injuries suffered by Plaintiff and the Class include, but are not limited to paying for Defendants' Products, paying a premium price for Defendant's falsely advertised coffees, and by the unlawful profits Defendant earned from the sales of these falsely advertised Products.

42.     Plaintiff Dumont and each of the other Class Members were injured by Defendants' unlawful conduct, in that they paid for Products which were not sold as represented.

43.     Had Plaintiff Dumont known that the Product label was inaccurate, she would have not purchased the Product at all or would not have purchased the Product at the price she paid.

44.     Defendants' unfair or deceptive acts or practices, as alleged herein, were willful or knowing violations of c. 93A, § 2, within the meaning of c. 93A, § 9(3).

45.     Pursuant to M.G. L. c. 93A, § 9, Plaintiff and each of the other members of the Class are entitled to recover their actual damages or statutory damages of $25.00 each, whichever results in a greater recovery, and to recover double or treble the amount of their actual damages, plus their reasonable attorneys' fees and the costs of this action.

46.     Plaintiff Dumont and the other members of the Class are also entitled to injunctive relief in the form of an order directing Defendants to cease their false and misleading labeling and advertising, retrieve existing false and misleading advertising and promotional materials, and publish corrective advertising.


## COUNT II
### Untrue and Misleading Advertising under M.G.L. c. 266, § 91

47.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

48.     Defendants' labeling, advertising, promotion, and marketing of its Products are untrue, deceptive, and misleading, in violation of M.G.L. c. 266, § 91.

49.     At all times relevant to this action, Defendants knew, or could, upon reasonable investigation, have ascertained that their labeling, advertising, marketing, and promotion of the product was untrue, deceptive, and misleading.

50.     Defendants' untrue, deceptive and misleading labeling, advertising, marketing and promotion of the product has continued throughout the Class Period.

51.     As purchasers of the product who were aggrieved by Defendants' false and misleading advertising (Class members purchased product(s) that did not conform to the representations made about it by Defendants), Plaintiff brings this class action to seek all available remedies under M.G.L. c. 266, § 91, including injunctive relief. The injunctive relief would include an order directing Defendants to cease their false and misleading labeling and advertising, retrieve existing false and misleading advertising and promotional materials, and publish corrective advertising.

## COUNT III
### (Unjust Enrichment)

52.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth therein.

53.     This claim is asserted in the alternative on behalf of Plaintiff and the Class, to the extent that any contracts do not govern the entirety of the subject matter of the disputes with Defendant.

54.     As a direct and proximate result of Defendant's misconduct as set forth above, Defendant has been unjustly enriched. Specifically, by its misconduct described herein, Defendant has accepted a benefit (monies paid by Plaintiff and the Class). Defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiff and the Class.

55.     It would be inequitable for Defendant to retain the profits, benefits, compensation, consideration and other monies obtained by and from its wrongful conduct in promoting, marketing, distributing, and selling the coffees.

56.     Plaintiff, on behalf of herself and all others similarly situated, seeks restitution from Defendant and an Order of this Court proportionally disgorging all profits, benefits, compensation, consideration, and other monies obtained by Defendant from its wrongful conduct.

17

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the proposed Class, prays for judgment as follows:

      a.      Certification of the Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Class and his counsel as Class counsel;

      b.      Actual or statutory damages, whichever results in a greater recovery, and multiple damages;

      c.      Restitution and disgorgement of Defendant's revenues or profits to Plaintiff and the members of the proposed Class as permitted by applicable law;

      d.      Statutory pre-judgment and post-judgment interest on any amounts;

      e.      Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

      f.      Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

Kathy Dumont,
By Counsel,

*/s/ John T. Longo*    *May 4, 2018*
_____
John Longo, Esq./BBO#632387
Citadel Consumer Litigation, PC
996 Smith Street, Suite 101
Providence, RI 02908
(401) 383-7550
Fax (401) 537-9185
jtlongo@citadelpc.com

18

Admissions to be sought Pro Hac Vice:

Michael D. Braun, Esq.
BRAUN LAW GROUP, P.C.
10680 West Pico Boulevard, Suite 280
Los Angeles, California 90064
Telephone: 310-836-6000
E-Mail: mdb@braunlawgroup.com

Andrew S. Kierstead
Law Office of Andrew Kierstead
1001 SW 5th Avenue, Suite 1100
Portland, OR 97204
Telephone (508) 224-6246
Fax (508) 224-4356
E-Mail: ajkier@aol.com

Peter N. Wasylyk
Law Offices of Peter N. Wasylyk
1307 Chalkstone Avenue
Providence, RI 02908
Telephone (401) 831-7730
Fax (401) 861-6064
E-Mail: pnwlaw@aol.com