## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHY DUMONT, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>REILY FOODS COMPANY and NEW ENGLAND COFFEE COMPANY,<br><br>        Defendants. | Civil Action No. 1:18-cv-10907-RWZ |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT

Defendants Reily Foods Company ("Reily") and New England Coffee Company ("NEC") (collectively "Defendants") submit this memorandum of law in support of their Motion to Dismiss the Class Action Complaint ("Complaint") (Doc. 1) filed by Plaintiff Kathy Dumont ("Ms. Dumont" or "Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff alleges she purchased a package of Hazelnut Crème-flavored ground coffee beans produced by NEC. The front-side of the package stated that it contained "100% Arabica Coffee." The backside of the package stated that the coffee was "Naturally and Artificially Flavored." According to Plaintiff, NEC should have placed the words "Naturally and Artificially Flavored" on the front of the package instead of the back, because the package "did not contain Hazelnut." Compl. ¶ 8. Plaintiff provides no details about her alleged purchase and alleges no facts that would support the conclusion that she was deceived or suffered economic injury.

Nevertheless, she asserts three state law claims and seeks to represent a nationwide class based on a sweeping, but incorrect, legal theory–that NEC's packaging violated a federal regulation, 21 C.F.R. § 101.22, implementing the Food, Drug & Cosmetic Act, as amended by the Nutrition Labeling and Education Act of 1990, 21 U.S.C. § 301 *et seq.* ("FDCA"), and that any violation of this regulation creates a viable cause of action under Massachusetts state law.

The FDCA does not authorize a private right of action for violations of its implementing regulations, and the implied preemption doctrine prevents Plaintiff from relying on state law as her own private enforcement mechanism when Congress decided against one. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) ("The FDCA leaves no doubt that it is the Federal Government rather than private litigants who were authorized to file suit for noncompliance [with its provisions]."). While Plaintiff alleges the packaging also violates various state regulations governing truth in advertising, none of those regulations impose requirements like those found in 21 C.F.R. § 101.22. Instead, Plaintiff holds 21 C.F.R. § 101.22 out as the standard against which her deception allegations rise or fall and dedicates the bulk of her Complaint to arguing why the packaging violates 21 C.F.R. § 101.22. In doing so, Plaintiff has effectively conceded that her claim is in substance a claim for a violation of the standard set by 21 C.F.R. § 101.22, an outcome not permitted under *Buckman Co*.

Even if Plaintiff could rely on state law as a private enforcement mechanism for FDCA packaging regulations, the Supreme Judicial Court has held many times that an allegation of a regulatory infraction does not, without more, create a viable cause of action for damages or injunctive relief. *See, e.g.*, *Klairmont v. Gainsboro Rest., Inc.*, 465 Mass. 165, 178 (2013). Rather, in order to state a claim, Plaintiff has the burden of alleging non-conclusory and non-speculative facts from which, if proven true, a jury could find she reasonably concluded based on the packaging

of the flavored coffee product that the coffee contained actual hazelnuts and that, as a result, she suffered an ascertainable loss. *Edlow v. RBW, LLC*, 688 F.3d 26, 39 (1st Cir. 2012). The allegations in the Complaint not only fail to meet this standard, but they also reveal that any effort to amend the Complaint would be futile.

The Complaint includes images of the front and back panels of the packaging for the Hazelnut Crème-flavored ground coffee. The front panel of the package prominently states that it includes "100% Arabica Coffee." The images further disclose that neither the front nor back panels of the package stated, directly or indirectly, that the coffee contained hazelnuts. Rather, the word "hazelnut" appears only once on the packaging and then only in conjunction with the word "crème," where it used as an adjective. Plaintiff does not allege that she was deceived into believing the product contained "hazelnut crème." She alleges that the packaging caused her to conclude the product contained actual hazelnuts. This belief is patently unreasonable because the packaging never represented that the product was made with hazelnuts. Further, the back panel eliminated any risk of a reasonable mistake about the product ingredients by reaffirming that the sole ingredient was "100% Arabica Coffee" and that the coffee was "Naturally and Artificially Flavored." Consequently, even if Plaintiff had alleged further details about her purchase and resulting alleged injury, common sense establishes that a reasonable consumer would not conclude that the flavored ground coffee product contained hazelnuts.

In addition to the shortcomings in her allegations on deception and injury, Plaintiff's Complaint fails to meet the heightened pleading requirements under Fed. R. Civ. P. 9(b); Plaintiff failed to comply with the pre-suit notice requirements of M.G.L. c. 93A, § 9(3); and Plaintiff improperly alleges an unjust enrichment claim despite the existence of other remedies. Plaintiff also places her standing at issue by seeking: (1) remedies for deceptive packaging associated with

NEC products she never purchased, and (2) injunctive relief even though she faces no real or immediate threat of future injury.  For these reasons, and as more fully discussed below, the Complaint should be dismissed, with prejudice.

<b><u>BACKGROUND</u></b>

NEC operates as a subsidiary of Reily Foods Company and packages and sells a variety of flavored coffee products.  Compl. ¶¶ 6, 7, 12.  Among the flavored coffee products sold by NEC is Hazelnut Crème-flavored ground coffee sold in an 11 oz. vacuum-sealed bag.  *Id.* at p. 5 (showing front side picture of an 11 oz. bag of Hazelnut Crème ground coffee).  The words "FRESHLY GROUND 100% Arabica Coffee" appear at the top of the package.  *Id.*  A banner appears in the middle of the front panel which states "Hazelnut Crème > Medium Roasted □ Rich, Nutty Flavor."  *Id.*   The front and back panels of the package do not represent that the product contains hazelnuts, nor do they show a picture of a hazelnut.  The back panel of the package also includes an ingredient list, which reads: "Ingredients: 100% Arabica Coffee > Naturally and Artificially Flavored."  *Id.* at p. 6 (showing backside picture of an 11 oz. bag of Hazelnut Crème-flavored ground coffee).

The images of the front and back panels of the package as depicted on pages 5 and 6 of the Complaint are reproduced on the following page:







Ms. Dumont alleges that she purchased "at least one package of NEC's Hazelnut Crème Coffee in Massachusetts," but provides no other details about her purchase. Compl. ¶ 8. She does not disclose when she bought the coffee, where she bought it, who she bought if from, how much she paid for it, whether she purchased for consumption or resale, the availability and pricing of competing brands, her familiarity with coffee, or why she drew the conclusion that the package contained hazelnuts when the word "hazelnut" only appears on the packaging once and then only as a modifier of the word "crème." Nor does Plaintiff allege any other facts that establish a plausible claim that she was deceived by the packaging or that she was injured by her coffee purchase. Rather, she only makes the unsupported assertion that she acted "based on the representation and reasonable belief that the Coffee contained Hazelnut" and that had she known "the Product did not include hazelnut, she would not have purchased the product." *Id.*

Plaintiff dedicates the balance of her Complaint to boilerplate class allegations and offering a legal argument about the meaning of 21 C.F.R. § 101.22 and why she believes that the packaging failed to comply with that regulation. Significantly, Plaintiff does not limit her claims to flavored coffee products that she purchased and does not limit her class definition to consumer purchasers of Hazelnut Crème-flavored ground coffee products sold by NEC.[1] Rather, Plaintiff seeks damages and declaratory and injunctive relief for herself and the putative class with respect to any sales by NEC of flavored coffee products that violated 21 C.F.R. § 101.22.

On July 28, 2017, Ms. Dumont's attorney sent a demand letter to NEC (attached here as Exhibit A) demanding that NEC reimburse Ms. Dumont for her purchase of NEC coffee. Compl.

---

[1] Plaintiff seeks to certify a class of "all persons who purchased NECC coffees, which contain natural and/or artificial flavors, but fails to indicate the coffee is flavored on the front label of the package." Compl.. ¶ 23. Excluded from the class are persons affiliated with Defendants. *Id.*

¶ 3.[2]  Like her Complaint, the letter lacked details about the purchase and stated only that "Ms. Dumont is a purchaser of New England Coffee Company's Flavored Coffees."  Ex. A. at 1.  On August 22, 2017, NEC responded to Ms. Dumont (attached here as Exhibit B) by denying the allegations, but offered to reimburse the purchase price.  Ex. B. at 2; Compl. ¶ 3.  Rather than responding to NEC's reimbursement offer, Ms. Dumont filed the Complaint on May 7, 2018.

## LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), this Court must "first disregard all conclusory allegations that merely parrot the relevant legal standard" and "then inquire whether the remaining factual allegations state a plausible, rather than merely a possible, assertion of defendants' liability."  *Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 231 (1st Cir. 2013). Further, the heightened pleading standard of Rule 9(b) applies to Plaintiffs' claims under M.G.L. c. 93A and M.G.L. c. 266, § 91.  *See Mear v. Sun Life Assurance Co. of Can. (U.S.)*, No. 06-12143-RWZ, 2008 U.S. Dist. LEXIS 9593, at *14 (D. Mass. Jan. 24, 2008) (Rule 9(b) applies to M.G.L. c. 93A); *Bezdek v. Vibram USA Inc.,* No. 12-10513-DPW, 2013 U.S. Dist. LEXIS 22939, at *27 (D. Mass. Feb. 19, 2013) (Rule 9(b) applies to M.G.L. c. 266, § 91).  Consequently, Plaintiff was required to "state with particularity the circumstances constituting fraud or mistake" by pleading "the 'time, place and content of an alleged false representation.'"  *Martin v. Mead Johnson Nutrition Co.*, No. 09-11609-NMG, 2010 U.S. Dist. LEXIS 104923, at *8 (D. Mass. Sep. 30, 2010) (quoting *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980)).  Dismissal of

---

[2] Although the Complaint refers to the July 28, 2017 letter to NEC and NEC's August 22, 2017 response, Plaintiff did not attach the documents to her Complaint.  The documents are central to her claim.  Accordingly, this Court may consider them as part of Defendants' Rule 12(b)(6) motion to dismiss.  *See Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988) ("[W]hen plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading.") (quoting 5 C. Wright & A. Miller, Federal Practice & Procedure § 1327 at 762-63 (1990)).

the Complaint is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotation marks omitted).  "[M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times such accusations are repeated." *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985).

With respect to a Rule 12(b)(1) motion, the Court should accept factual allegations of injury resulting from the defendant's conduct as true as long as they include the "specific facts" necessary to support the claim.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  However, the party invoking federal jurisdiction bears the burden of establishing each of the elements of standing.  *Id.*  As such, Plaintiff has an affirmative burden to show that she has suffered injury in fact, that the injury can be traced to the challenged conduct of Defendants, and that her injury can be redressed by the Court.  *Id.*  For injunctive and declaratory relief, Plaintiff must show that she faces an imminent risk of future harm.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

## ARGUMENT

Plaintiff asserts three claims: violation of M.G.L. c. 93A, § 2 (Count I); violation of M.G.L. c. 266, § 91 (Count II); and unjust enrichment (Count III).  She asserts her claims both individually and on behalf of a putative nationwide class of consumers who purchased NEC flavored coffees.  As set forth below, Plaintiff fails to allege facts to support these claims or her standing to bring those claims.  Moreover, any effort to remedy the fatal defects in her pleading would be futile under a reasonable consumer standard.

## I.   THE COMPLAINT MUST BE DISMISSED WITH PREJUDICE BECAUSE COUNTS I-III ARE IMPLIEDLY PREEMPTED BY THE FDCA.

Although Plaintiff asserts claims under Massachusetts state law, those claims are entirely predicated on an alleged violation of the FDCA.  According to Plaintiff, 21 C.F.R. § 101.22 requires the words "Naturally and Artificially Flavored" to appear on the front of NEC's coffee package.  Plaintiff alleges that because these words are not printed on "the front of its packaging," *ipso facto*, the "[f]ailure to do so misleads reasonable consumers into believing they are purchasing an item with qualities it does not have, and is in clear violation of the law."  Compl. ¶ 2. In other words, Plaintiff alleges that 21 C.F.R. § 101.22 establishes a standard for deception and that the coffee label is misleading because it fails to meet that standard.

The First Circuit has not addressed whether the FDCA preempts state law claims seeking to enforce its implementing regulations.  However, guidance can be gleaned from the Supreme Court's ruling in *Buckman Co. v. Plaintiff's Legal Committee*, 531 U.S. 341 (2001).  In that decision, the Supreme Court considered whether the plaintiffs could bring state law fraud claims against a defendant who had allegedly deceived the FDA on a device approval application.  *Id*. at 343.  The Court found the state law claims were impliedly preempted because "the federal statutory scheme amply empower[ed] the FDA to punish and deter fraud against the Agency, and [ ] this authority is used by the Agency to achieve a somewhat delicate balance of statutory objectives." *Id*. at 348.  Therefore, "[t]he balance sought by the Agency [could] be skewed by allowing fraud-on-the-FDA claims under state tort law."  *Id*.  The Court held that "[s]tate-law fraud-on-the-FDA claims inevitably conflict with the FDA's responsibility to police fraud consistently with the Agency's judgment and objectives," because "complying with the FDA's detailed regulatory regime in the shadow of 50 States' tort regimes [would] dramatically increase the burdens facing

potential applicants—burdens not contemplated by Congress in enacting the FDCA and the MDA." *Id.* at 350.

In reaching this conclusion, the Supreme Court cautioned that "The FDCA leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for noncompliance with [its] provisions." *Id*. at 349 n.4.  The Sixth, Eighth, and Ninth Circuits have pointed to *Buckman* to conclude that the FDCA's "public enforcement mechanism is thwarted if savvy plaintiffs can label as arising under a state law for which there exists a private enforcement mechanism a claim that in substance seeks to enforce the FDCA." *Loreto v. P&G*, 515 F. App'x 576, 579 (6th Cir. 2013); *see also Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013); *In re Medtronic*, 623 F.3d 1200, 1204 (8th Cir. 2010).  Thus, "[i]f the claim would not exist in the absence of the FDCA, it is impliedly preempted." *Id.* (citing *Buckman*, 531 U.S. at 353).  In other words, "private litigants may not bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violation the FDCA." *Loreto*, 515 F. App'x at 579.  Although it is possible for a plaintiff to successfully navigate the "narrow gap" between packaging claims that are preempted under the FDCA and those that are not, the plaintiff must provide detailed allegations that would support a finding that consumers would be plausibly deceived by the packaging independently of any packaging standards that may be established under FDCA regulations. *See In re Trader Joe's Tuna Lit.*, 2017 U.S. Dist. LEXIS 85093, *8-12 (C.D. Calif. Jun. 2, 2017) (discussing case law).

Here, it is clear that Plaintiff's claims would not exist in the absence of the alleged violation of 21 C.F.R. § 101.22.  Plaintiff has not alleged any reason why NEC's package is misleading other than its alleged noncompliance with an FDCA regulation.  Plaintiff alleges no details about the circumstances surrounding her purchase.  She provides no information about how she was

deceived, whether she reviewed the back panel of the package, and, if not, why not.  In a passing

effort to expand her claim beyond 21 C.F.R. § 101.22, Plaintiff identifies a laundry list of state

regulations and codes that she claims governed the packaging.  *See* Compl. ¶¶ 36–37.  However,

these regulations do not regulate food packaging specifically and purport only to establish general

standards for truth in advertising.  Thus, beyond conclusory allegations about her subjective

beliefs, Plaintiff offers no facts or objective standards against which her deception claim could be

measured except for her allegation that NEC violated 21 C.F.R. § 101.22.  In other words, Plaintiff

asserts state law claims that are entirely dependent on her proving a violation of the FDCA, a

statute that she lacks standing to enforce.  Under these circumstances, the Court should dismiss

the claims with prejudice as impliedly preempted by federal law.

## II.   COUNT I MUST BE DISMISSED WITH PREJUDICE BECAUSE PLAINTIFF CANNOT ALLEGE THE FACTS NEEDED TO SUPPORT A VIABLE CLAIM UNDER M.G.L. c. 93A, §2.

M.G.L. c. 93A, §2 prohibits "unfair or deceptive acts or practices" in business and

consumer transactions.  *O'Hara v. Diageo-Guinness, USA, Inc.*, No. 15-14139-MLW, 2018 U.S.

Dist. LEXIS 53462, at *9 (D. Mass. Mar. 27, 2018) (citing *Edlow v. RBW, LLC*, 688 F.3d 26, 39

(1st Cir. 2012)).  "A representation about a product is deceptive when it has the capacity to mislead

consumers, acting reasonably under the circumstances, to act differently from the way they

otherwise would have acted (i.e., to entice a reasonable consumer to purchase [a] product)."  *Id.*

Further, 940 CMR § 3.16(3) states that "an act or practice is a violation of [Chapter 93A] if . . . it

fails to comply with existing [Massachusetts] statutes, rules, regulations or laws, meant for the

protection of the public's health, safety, or welfare . . . intended to provide [Massachusetts]

consumers protection."  *Id.* at 10.  However, *Klairmont v. Gainsboro Restaurant, Inc.*, 465 Mass.

165 (2013), also teaches that "a violation of a law or regulation . . . will be a violation of c. 93A,

§ 2 (a), *only if* the conduct leading to the violation is both *unfair or deceptive* and occurs in trade

or commerce." *Id.* at 174.  Further, "'claims of injury premised on 'overpayment' for a product, or a loss of the benefit of the bargain, require an objective measure against which the plaintiff's allegations may be evaluated' and may not rest on the plaintiff's 'subjective belief' that he received a less valuable product than he paid for." *O'Hara*, 2018 U.S. Dist. LEXIS 53462, at *11.  Thus, an allegation of a regulatory violation, state or federal, does not by itself state a claim for relief under M.G.L. c. 93A, §2.

### A.      Plaintiff Fails to Allege Unfair or Deceptive Conduct by NEC and Cannot Rely on a Violation of a Federal Regulation to State a Claim.

Plaintiff cannot point to any state law or regulation that required NEC to include the disclaimer "Naturally and Artificially Flavored" on the front of its package.  Nor for the reasons explained above in Section I may she rely on an alleged violation of 21 C.F.R. § 101.22 to support her claim.  Rather, to state a viable cause of action, Plaintiff has the burden to allege "sufficient factual matter, accepted as true" to establish that it was plausible that a reasonable consumer would have interpreted the packaging to mean that the product contained hazelnuts.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Rule 9(b) further required Plaintiff to specify the "time, place, and content of an alleged false representation."  *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 22 (1st Cir. 2017).  Plaintiff fails to meet this burden and will not be able to meet this burden no matter how or how many times she might amend her Complaint.

The Northern District of Illinois recently surveyed the case law on deceptive packaging claims in a case involving grated parmesan cheese.  *In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 921-22 (N.D. Ill. 2017).  The survey revealed basis principles about distinguishing between reasonable and unreasonable conclusions drawn by consumers.  The district court explained that "[w]here a plaintiff contends that certain aspects of a

product's packaging are misleading in isolation, but an ingredient label or other disclaimer would dispel any confusion, the crucial issue is whether the misleading content is ambiguous; if so, context can cure the ambiguity and defeat the claim, but if not, then context will not cure the deception and the claim may proceed." *Id.* at 921.  The court went on to observe that:

> [i]n other words, while a reasonable consumer, lulled into a false sense of security by an unavoidable interpretation of an allegedly deceptive statement, may rely upon it without further investigation, see *Williams v. Gerber Prods Co.*, 552 F.3d 934, 939 (9th Cir. 2008) (depicting certain fruits prominently on a product called "fruit juice snacks" was deceptive, where neither "those fruits [n]or their juices [we]re contained in the product," even though the ingredient list accurately revealed the product's ingredients), consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight, see *McKinnis v. Kellogg USA*, 2007 U.S. Dist. LEXIS 96106, 2007 WL 4766060, at *3-5 (C.D. Cal. Sept. 19, 2007) (holding that a reasonable consumer would check the ingredient list to determine whether there was actual fruit in "Froot Loops" breakfast cereal, where the product's allegedly misleading characteristics included the "fanciful" word "F-R-O-O-T" in its name, depictions of "ring-shaped cereal resembling fruit" and "illustrations of fruit surrounding [a] banner stating 'NATURAL FRUIT FLAVORS,'" but not any "specific affirmation" that the product contained actual fruit). This distinction rests on the principle that, when product descriptions are merely vague or suggestive, "[e]very reasonable shopper knows the devil is in the details." *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015).

*Id.* at 921-22.  This guidance is particularly instructive for analyzing the packaging claims in this case.

Plaintiff alleges, at best, that NEC placed the words "Naturally and Artificially Flavored" on the back of its product packaging rather than the front and that the positioning of these words on the back panel allegedly violated a federal regulation.  Plaintiff does not allege facts to support the conclusion that NEC intended to mislead or deceive consumers in any way or that it commercially enriched or competitively advantaged itself in any way by not positioning "Naturally and Artificially Flavored" on the front panel.  She also offers no facts to support the conclusion that other consumers were misled by the packaging or that they are likely to be misled in the future. Nor does Plaintiff provide any facts about the circumstances of her own coffee purchase:  she does

not allege when she bought the coffee; where she bought it; what size package of coffee she purchased; how much she paid for it; her reasons for purchasing the products; or whether similar products were present at the point of sale.  She does not describe the appearance of the package that she *herself* purchased; [3] she does not state whether she looked at the front of the package; she does not state whether she looked at the back of the package; and she does not state whether she compared the package to any other competing products.

The few facts that Plaintiff does allege show that NEC's labeling was not unfair or deceptive.  As the images in the Complaint reflect, the package discloses its ingredients in prominent type on both the front and back panels–"100% Arabica Coffee."  The package does not claim anywhere that the product includes real hazelnuts; it does not show a picture of a hazelnut; and it does not claim to be devoid of artificial flavors.  Rather, Plaintiff's sole complaint is over the location of the words "Naturally and Artificially Flavored"–information readily visible on the back of the package where a reasonable consumer would expect it to be if he or she had any question about the product contents.  *See O'Hara*, 2018 U.S. Dist. LEXIS 53462, at *9 (quoting Restatement (Second) of Torts at §541) (noting that a reasonable consumer must "utilize[ ] his opportunity to make a cursory examination or investigation").  As such, even if Plaintiff were permitted to amend her Complaint, the effort would be futile.

Other courts reviewing similar deceptive advertising claims have held that a reasonable consumer cannot, as a matter of law, claim that product packaging is deceptive when the packaging as a whole contains accurate information, absent an affirmative misrepresentation.  *In re: 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d at 923  ("Reasonable

---

[3] As detailed in the Complaint, different size NEC packages have different appearances. *Compare* Compl. p. 5 (11 oz. coffee package) *with* Compl. p. 11 (16 oz. coffee package).

consumers . . . know exactly where to look to investigate—the ingredient list."); *Dumas v. Diageo PLC*, 2016 U.S. Dist. LEXIS 46691, *6 (S.D. Cal. Apr. 6, 2016) (rejecting claim that consumer was deceived into believing that Red Stripe beer is brewed in Jamaica because of representation that it is "Jamaican-style Lager," because the bottom of the packaging states that it is brewed and bottled by the Red Stripe Beer Company in Pennsylvania); *Simpson v. Kroger Corp.*, 219 Cal. App. 4th 1352, 1372, 162 Cal. Rptr. 3d 652 (2013) (rejecting claim that prominent use of "Butter" on product label would lead a reasonable consumer to believe he had purchased a product containing only butter, because the top and side panels of the container said the product contained canola or olive oil in addition to butter); *Hairston v. S. Beach Beverage Co.*, 2012 U.S. Dist. LEXIS 74279, *13 (C.D. Cal. May 18, 2012) (rejecting claim that label of vitamin-enriched drink was deceptive, because the language was not used "in a vacuum" and any ambiguity about the vitamins in the container was clarified by the detailed information in the ingredient list).   In this case, because Plaintiff fails to allege any facts to suggest that the packaging contained any statement or image that would reasonably lead to the unavoidable conclusion that the product contained real hazelnuts, her claim fails under any pleading standard and cannot be rehabilitated by any amendment.  Accordingly, this Court should dismiss the Complaint, with prejudice.

### B.      Plaintiff Fails to Allege Any Facts to Support Causation or Injury.

Chapter 93A, §9 gives the individual consumer a right to sue only when she suffers an objective, identifiable harm that goes beyond the deception or unfairness itself.   *Hershenow v. Enter. Rent-A-Car Co. Of Boston, Inc.*, 445 Mass. 790, 801-02 (Mass. 2006). Further, under the law of this Circuit, a deceptive advertising injury exists only when the plaintiff has maintained possession of the product in question.  *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 251 (1st Cir. 2010).  As explained in *O'Hara*, "claims of injury premised on 'overpayment' for a product, or a loss of the benefit of the bargain, require an objective measure against which the

plaintiff's allegations may be evaluated" and may not rest on the plaintiff's "subjective belief" that he received a less valuable product than he paid for.  2018 U.S. Dist. LEXIS 53462, at *11.  "The complaint must identify a legally required standard that the [product was] at least implicitly represented as meeting, but allegedly did not."  *Id.*  "In addition, overpayment may not be inferred solely from the fact that a product was deceptively advertised, since the deception itself cannot be the requisite injury." *Id.* (citations omitted).

Here, Plaintiff does not allege injury to her person or property.  She has said, in fact, virtually nothing about her alleged injuries or their cause other than to conclude that she either would not have purchased the product or would not have paid as much for it if the front panel of the product (as opposed to the back panel) had contained the words "Naturally and Artificially Flavored."  Absent from the Complaint are allegations about her reliance on the packaging in making her purchasing decision, the price she paid for the product, the availability or use of product or point of sale discounts or other promotions, whether she purchased the product for resale or personal consumption, or the availability and pricing of competing products at the point of sale or through other outlets.  For example, Plaintiff does not allege that any of the competing products identified in her Complaint as compliant with 21 C.F.R. § 101.22 were selling for less than the NEC product or, inversely, that the alleged noncompliance with 21 C.F.R. § 101.22 permitted NEC to sell at a premium price.  Plaintiff also says nothing about whether she still has possession of the product, if she consumed the product, or why she failed to take advantage of NEC's written offer to reimburse her for the purchase price of the product if she provided a proof of purchase.  Instead, she has proceeded on a theory that a violation of 21 C.F.R. § 101.22 constitutes a per se violation of Chapter 93, § 2, and per se injury.  The case law does not support this theory.  Without allegations to support the conclusion that Plaintiff suffered an actual monetary loss or injury to her

person or property, the Court does not have a factual basis for concluding that Plaintiff suffered

the type of harm compensable under Chapter 93, § 2.

    **C.**    **Plaintiff's Claim Must Be Dismissed Because Her Demand Letter Failed to Comply With the Requirements of Chapter 93A § 9.**

Plaintiff also failed to comply with the notice requirements of chapter 93A § 9(3).  Pursuant

to chapter 93A, § 9, a plaintiff seeking recovery under § 2 must first provide the defendant with "a

written demand for relief, identifying the claimant and reasonably describing the unfair or

deceptive act or practice relied upon and the injury suffered."  "The demand letter requirement is

not merely a procedural nicety, but, rather, a prerequisite to suit, designed to encourage negotiation

and settlement and as a control on the amount of damages."  *McKenna v. Wells Fargo Bank, N.A.*,

693 F.3d 207, 217-18 (1st Cir. 2012) (internal quotations and citations omitted).

Here, Plaintiff mailed a "demand" letter to Defendants on July 28, 2017.  Ex. A.  The letter

did not describe the flavor or variety of the coffee she purchased; it did not disclose the point of

sale or when she purchased the coffee; it did not describe how she was personally misled; and it

did not reveal what she paid for the coffee, thus giving no indication of any injury that she suffered.

Without this information, NEC had no opportunity to remedy the alleged deceptive practices.  If

the letter did not "reasonably" describe the unfair practice complained of or the injury suffered,

Plaintiff cannot reasonably contend that it met the notice requirements of chapter 93A, § 9.  Under

these circumstances, the claim must be dismissed.

**III.**    **COUNT II MUST BE DISMISSED WITH PREJUDICE BECAUSE PLAINTIFF CANNOT ALLEGE THE FACTS NEEDED TO SUPPORT A VIABLE CLAIM UNDER MASS. GEN. LAWS CHAPTER 266, § 91.**

M.G.L. c. 266, § 91, prohibits advertising that contains "any assertion, representation or

statement of fact which is untrue, deceptive or misleading, and which such person knew, or might

on reasonable investigation have ascertained to be untrue, deceptive or misleading."  "The statute

does not provide a private right of action," *Thornton v. Harvard Univ.*, 2 F. Supp. 2d 89, 95 (D. Mass. 1998), but allows an 'aggrieved party' to bring an equitable petition for injunctive relief." *Bezdek v. Vibram USA, Inc.*, No. 12-10513, 2013 U.S. Dist. LEXIS 22939 at *5 (D. Mass. Feb. 20, 2013).  This claim fails for the same reasons that the Chapter 93A § 2 fails–Plaintiff has not and cannot allege facts to support the conclusion that the packaging contained any statement or image that would reasonably lead a consumer to the unavoidable conclusion that the product contained real hazelnuts.  Additionally, Plaintiff has not alleged any facts to support the conclusion that NEC benefitted, commercially or competitively, from positioning the words "Naturally and Artificially Flavored" on the back of its package rather than the front.  In the absence of these types of allegations, the Complaint provides insufficient information to conclude that NEC acted knowingly as required by the statute.  Finally, as further discussed below, Plaintiff is not facing any risk of future harm and, therefore, lacks standing to pursue a claim for injunctive relief, the only remedy available under Chapter 266, § 91.  The claim, therefore, should be dismissed with prejudice.

## IV.   COUNT III MUST BE DISMISSED WITH PREJUDICE BECAUSE PLAINTIFF HAS AN ADEQUATE REMEDY AT LAW.

In the third count, Plaintiff asserts a claim on a theory of unjust enrichment.  Compl. ¶¶ 52–56. Unjust enrichment is defined as the "retention of money or property of another against the fundamental principles of justice or equity and good conscience."  *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005).  To succeed on a claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value.  *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009).  However, "a party with an adequate

remedy at law cannot claim unjust enrichment." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017). Here, Plaintiff has an adequate remedy at law—specifically, consumer protection statutes such as M.G.L. c. 93A, § 2 and M.G.L. c. 266, § 91. Even though those claims fail, "[i]t is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Shaulis*, 865 F.3d at 16; *see Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) ("Plaintiff's negligence and chapter 93A claims . . . preclude a claim for unjust enrichment. The disposition of those claims is irrelevant. Their mere availability is a bar to unjust enrichment."); *Adelphia Agios Demetrios, LLC v. Arista Dev., LLC*, No. 12-10486-RWZ, 2014 U.S. Dist. LEXIS 49687, at *15 (D. Mass. Apr. 8, 2014) (barring unjust enrichment claim because "[a] statutory or common law claim for damages is an adequate legal remedy"). As such, the unjust enrichment claim is barred and should be dismissed.

## V.    PLAINTIFF DOES NOT FACE A CONCRETE RISK OF FUTURE HARM AND, THEREFORE, LACKS ARTICLE III STANDING TO PURSUE CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF.

Plaintiff seeks injunctive relief under Counts I and II of the Complaint (Compl. ¶¶ 46, 51) and claims a right to declaratory relief without specifying a claim. *Id.* ¶ 5. To establish Article III standing to seek injunctive relief or declaratory relief, a plaintiff must show that she is under threat of suffering "injury in fact that is concrete and particularized [and that] the threat is "actual and imminent, not conjectural or hypothetical." *Summers,* 555 U.S. at 493. Plaintiff's allegations do not meet this standard. Specifically, Plaintiff fails to allege she is likely to purchase NEC's flavored coffee products in the future or that if she did, she would be misled by the packaging. As such, she is in no "real and immediate threat of future injury." *O'Hara*, 2018 U.S. Dist. LEXIS 53462, at *44 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)); *see also Kaplan v. Fulton St. Brewery, LLC*, No. 17-10227-JGD, 2018 U.S. Dist. LEXIS 79961, at *20 (D. Mass. May 11, 2018) (plaintiffs lacked standing to seek such an injunction because they did not allege that they

would purchase product again in the future). The injunctive relief claims should be dismissed pursuant to Rule 12(b)(1).

## VI.   PLAINTIFF HAS NO STAKE IN MISLABELING CLAIMS BASED ON PRODUCTS WHICH SHE DID NOT PURCHASE AND, THEREFORE, LACKS ARTICLE III STANDING TO PURSE SUCH CLAIMS.

Plaintiff does not limit her claims for monetary and injunctive relief to the flavored coffee product that she purchased. Instead, Plaintiff also is seeking to recover damages and other relief based on the allegation that NEC sells other products that fail to include the words "natural and/or artificial flavors" on the front panel. To establish standing for these claims, Plaintiff has the burden to establish through her allegations that she (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan*, 504 U.S. at 560-61. Despite this burden, Plaintiff does not even bother to identify the unpurchased products or explain why they are deceptive or caused her injury. Her only allegation about the unpurchased products is that they violate 21 C.F.R. § 101.22 to the extent that the words "natural and/or artificial flavors" do not appear on the front panel. This allegation falls far short of the sort required to demonstrate that Plaintiff suffered an invasion of a legally protected interest. Congress, in fact, affirmatively decided that Plaintiff has no interest at all in such claims by refusing to allow for a private right of action to enforce the FDCA. Accordingly, the Court should dismiss all unpurchased product claims even if it were to permit Plaintiff to pursue claims based on the packaging of the Hazelnut Crème ground coffee that she does claim to have purchased.

## CONCLUSION

For the reasons stated above, the Complaint should be dismissed in its entirety and with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Respectfully submitted,

REILY FOODS COMPANY and
NEW ENGLAND COFFEE COMPANY


*s/ Timothy H. Madden*
Timothy H. Madden (BBO# 654040)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, MA 02110
P: (617) 720-2880
thm@dcglaw.com

Mark A. Cunningham (La. Bar No. 24063)
*Pending pro hac vice admission*
Thomas A Casey, Jr. (La. Bar No. 01291)
*Pending pro hac vice admission*
John Guenard (La. Bar No. 36483)
*Pending pro hac vice admission*
JONES WALKER LLP
201 St. Charles Avenue
New Orleans, LA  70170
P: (504) 582-8000
mcunningham@joneswalker.com
tcaseyjr@joneswalker.com
jguenard@joneswalker.com

Dated: July 9, 2018


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


Dated: July 9, 2018


*s/ Timothy H. Madden*
Timothy H. Madden